May it please the court, judges of the Ninth Circuit Court of Appeals, I'm Randall Simpson, legal counsel for the Alaska Laborers Employers Retirement Fund, Health Fund, Legal Services Fund, and Training Fund. They are all multi-employer ERISA funds set up under the Labor Management Relations Act as far as a joint board of management, employer representatives, and union representatives to administer these plans for the exclusive benefit of laborers throughout the state of Alaska. And the underlying action is based on collective bargaining agreements which provide for contributions to be paid by contractors to these various trust funds. I would submit the briefing in this matter has been fairly focused and the lines are drawn very specifically in the briefing on whether or not a cause of action in an initial trust collection case, which is for non-payment and late, non-timely payment, must include the option of a cause of action for under-reporting, non-disclosure of full reporting by employer, or risk-raised judicata once you go to... That's... Mr. Simpson, let me ask you the fact that bothers me the most in this case, and that is that apparently there was a default judgment sought here, and at the time that the district court said, prove up your damages, you were in possession of an accountant's report that later became the basis of the second action. Why didn't you just come into the district court, lay out the accountant's report, and say, your honor, here it is, here's the sum total that we think is due and owing? It's interesting. This is what counsel asked me as well. Basically, I think you have to understand the multi-employer construction field. I mean, basically, I've done collection, trust collection cases for over 30 years. Most of them, the vast majority, maybe 90%, is purely a contractor who just hasn't gotten that. Their cash flow is bad. Sure. The contractor hasn't come in, so you rely on the reports. It's a self-reporting, and most contractors I submit to you report accurately, and when you have those reports in hand, signed by the employer saying, we represent, these are the hours, then that's what you go with. The audits are a double-check, a triple-check, whatever you want to say, and it's not like you immediately just go in and say, oh, this employer has committed fraud on the trust funds. We are going to come after you, employer. But didn't you have a bottom-line number in the accountant's audit report that, I mean, you knew at that point that not only had this particular contractor failed to timely file a report and remit the payments that he owed, but you knew that he was also fudging on the time record. And again, that was after the complaint had been filed. It was after we were already... But before the damages were to be established. I understand, but you had the employer who knew, I mean, the employer was not just unengaged and out there. He didn't enter an appearance, he didn't get an attorney, because he knew the trust funds who he'd been talking with, and the attorneys, were going after what he had reported as he owed. He knew he had to pay it. He was there, and he was ready. In fact, once we got the default judgment, he paid that amount because he accepted that. When you bring in a payroll audit, and you're saying, Mr. Employer, sorry, you've told us you only paid this amount, but we think you paid less, that's a whole different scenario. How does that relate, though, to this raised judicata issue? It only relates to the raised judicata in that when was the issue drawn in the case, and whether the case should have included the under-reporting, the failure to report, the fraud in that reporting, whether that is subsumed in every trust collection case. And I will submit to you, if this court goes that direction, then it's going to turn trust collection into... When you say every trust collection case, what do you say, most of these are collections for late payments or underpayments, right? Yeah, because there's self-reporting on them. Now, you consider that different from, say, sort of denying any liability at all? No. What I consider that different from is it was identified in, I'm not going to say it, it was pronounced Mompoyo, which was cited after Carr, which is what the other side relies on. Carr, there were three attempts at audit, three suits. The trusts in that case were very much on notice that there was a problem with that employer. We did not, this case, the trust did not know there was a problem. They had an audit, but I can tell you, I've seen those audits sometimes, and the auditor's opinion is very clear, we're not saying this is it, but we have a question of the reports were paid, we were suing for those reports, let's get that out of the way, let's worry about the audit. In fact, usually what happens when we get an audit, we send the audit to the employer. Do you have any problem with this? You don't just immediately slam it into the case of collection because then you, you know what, we'd be here now, you know, three years later, over a $170,000 case, as opposed to we got paid, the pension funds got paid on $100,000, the pension funds are covered, and there wasn't any compelling need because when we filed the lawsuit, all we knew was that, you know, the employer had missed payments. And Mopoyo is very clear, there's a distinction to be drawn in Reyes-Judicata when the other side has concealed a specific problem. Well, but we didn't, but it was, it was known at the time of the default judgment. All there was known is that there may have been under-reporting. That's all that audit shows. Well, but I could tell you every audit that we've ever done, auditors don't know. They don't know was that employer, employee, they were reporting on a laborer, or was he a carpenter apprentice, or was he a electrician? So what you've done is you've turned a very simple, quick complaint for non-timely payment into a big production. You've turned it into a big, and I don't think Reyes-Judicata requires that. The big production, counselor, is what I'm worried about. I mean, I look, I looked at the briefs, looked at what we had to say here. It seemed to me the audit says that D had failed to report and pay $168,837.67. If I look at your complaint, there was a failure to pay of $133,829.88. I don't see any difference. One says he failed to pay, another says he failed to report and pay. Then we go to the liquidated damage, and we go to the interest and account and attorney's fees, and we can up it up. But the liquidated damage doesn't necessarily say fraud. The liquidated damage doesn't say anything about that. All it says is we're going to have damages for what we have, and I started out, I mean, I was a collector's attorney. I remember collecting against those who would not pay, and if I then thereafter found out that there were more, there was more, they should have paid. I didn't enter default judgment on what I thought the first time. I upped my default judgment. Let them see it again. Let them fight about it again. That's why I don't know how to differentiate here. I don't see any difference in fraud. I don't see any difference in what you were really trying to do. All I see is the same action, but a different figure. No, it's not the same action. That's the crux of it. Well, what is difference? Where do I find that in the record? It doesn't have anything to do with the powered audit. The audit disclosed $168,000. I understand, but we're not really talking about whether you had the powered audit or you didn't. We're talking about whether there was a difference in money. Judge, what I'm telling you is if you look closely at the audit, what it disclosed was there's about a $30,000 increase from $100,000 in contribution to about $130,000 contribution. There was a distinct difference in the amounts. It was because I don't know what us trailblazing was doing, but they probably thought, well, this guy's not dispatched by the union. I don't need to pay. If this guy was a carpenter acting kind of in a labor, I don't need to pay. That's what payroll audits sometimes pick up. They pick up a few little distincting points. Frankly, to up the ante on just an audit, when you have a default, the employer understands they didn't pay. He knew he didn't pay. He was talking to us about not paying. Then you can get in and you can get that paid, and then you wait until later to deal with this audit showing the improper disclosure. That was not because the trustees did anything wrong. That was because the reports filed by the employer were wrong. I guess I'm struggling with the same issue that my brother Smith is struggling with. The operative fact here that I gleaned from the cases is what did the plaintiff know and when did he know it? At the time that default judgment was sought, your client knew that it was owed more than the amount of money that is. We knew there was a potential. We knew that there was some issue about the report. Then why not amend the complaint and hold off on obtaining the default judgment? Because then you open up the case for us, as Judge Smith has pointed out, you open up the case for this litigious issue that's going to drag out the collection process, going to drag out payments of the pension fund, when you know and the other party knows this amount is owed. There's nothing that, why are you going to preclude trust funds from collecting what they know is due? The employer agrees that it's all kind of set, and you're going to open it up, amend the complaint? There's nothing in res judicata that requires that. If you look at the transactional test, you look beyond just this arbitrary date, and I think the Cabrera case shows it should be before the complaint is filed. If there was any knowledge, your honor, if there was any knowledge on the part of the trust, it was, oh my goodness, it looks like this employer wasn't the good employer. We thought maybe there were some errors. Let's put that off for another day. And frankly... But what does that do to the whole, I mean, the doctrine of res judicata is designed to avoid piecemeal litigation, and if we rule in your favor, it seems to me that we're doing just the opposite. It's not piecemeal. We're encouraging piecemeal litigation. It's not piecemeal. Because the first order of cases is collection of reported amounts that are owed, and that was what we knew when we filed the complaint. This is a clear amount that's owed. Oh, and by the way, the auditor is now, after the default, after we've gone forward, the auditor is saying, wait a second, there may be a problem here. It may not be. You know, frankly, if we looked back, you know, in June, after the judgment, and looked at the audit, oh, Mr. Auditor, you've got this person here, that's wrong, they shouldn't be in there. And you would go in, and I tell you, trust collections, when I get an audit, that's what we do. We give the audit to the employer. We work it out. We don't immediately go in and file a lawsuit. We went and immediately filed a lawsuit on the claim that was there. And it's not piecemeal. The claim that was there, that we knew about, for sure, was lack of timely payment. That is not subsumed in... Let me ask you a question. If in fact I try to follow you through, why did you go for the default? Why didn't you put the default off? Because you're... Why do you... You know... I mean, I've gone after enough debtors in my life, farmers. There will be some who will just come in and say, I owe you this, but I don't owe you this. It doesn't seem to me that I pursue the default on what they owe. It seems to me that if we're going to really fight out what else there is there, we take it all in, not get a judgment, because I'd be trying to avoid exactly where you are. What you're really saying I should be saying with this particular case is, okay, if they admit something, you can get a judgment on that, but you can still come back and fight about what they don't admit, even though it's the same cause of action. It's not the same cause of action. It would be similar to, suppose you got delivered a car, a brand new Ford, and then you got it delivered late. Well, I want to get paid for being... You didn't give it to me at the time. But then you find out after you're driving the car, oh, it's not a Ford at all. They mislabeled it. They dummied it up. And you're saying then, oh, then you have to go through a whole other, bring in a whole new lawsuit into the middle of the lawsuit where you're saying that, first of all, it was late. And I think what would happen is trust fund collections would skyrocket, because 90 percent of them, it's just bing, bing, bing, no problem. But if you have to, every time, do an audit, costs go up. Every time do an audit, employers will not admit to it because there is a dispute. This is because the auditor went in and said there's amount owed. That's not going to go immediately to trial and judgment. The reason why we go to a judgment on what is owed right away is you get that off the books. You get the money into the pension plan. The pension plan invests the money. If you prolong contributions for three, four, five years, you miss a market. The pension fund goes down. And I can tell you, if that's the precedent and you require every pension plan in the Ninth Circuit to get an audit, you know, the guy employer says, here, I owe you this amount. Oh, wait a second. We're going to audit you and then sue. Mr. Samson, I don't think that's what we would be saying. I think we would be saying, if you get an audit before you seek the default judgment and you know that the amount is higher, then you have to take some action. If you don't get the results of the audit until after you obtain the default judgment, then under the case law, those are new facts that were not known at the time. They weren't because it's not, I think what's distinctive is there's a suspicion. There's not a knowing. Okay. We've let you go way over and I want to give Mr. Fitzgerald an opportunity to respond. Thank you, Mr. Samson. If it may please the court, Kevin Fitzgerald on behalf of Alaska Trailblazing. I want to take just a couple of minutes to respond to my colleague's arguments. And there's both a legal and a factual response. The legal response is essentially what my colleague is arguing here is the fraud exception to rejudicata that flows from the restatement second of judgments. And I think that the parties have spent a significant amount of time really quibbling over the terms that might be used, whether it's a fraud exception or whether it's a misrepresentation exception or an innocent misrepresentation, what have you. I don't think that that is particularly germane because the law clearly provides that it doesn't apply. That is the exception doesn't apply if the claim misrepresentation has been discovered or is known during the first action and that was cited in Hartnett. Secondly, of all with regard to the facts, the court has the trial court made a determination, a factual determination in a summary judgment motion and ruling that as a matter of fact, the plaintiff did know about the audit information, that is they did know about the additional damages. And frankly, there can't be any controversy in that. There can't be because if you look at the audit itself, which you can find on record 93 through 94, that was dated February 24th, 2010 and the audit report provides the number of $197,000. Well I don't pretend to be any math genius, but if you look at the second complaint that was filed and you reduce from it in the amount that was claimed as the total due was $197,000, which was the same number as the audit amount, and you reduce that by the amount that was already paid, you get the $63,000 that is the basis of the second complaint. So it is exactly the same facts and the same damage figure that the trustee knew about as of February 24th. The inquiry was made with regard to, well, why didn't the trustee then either simply delay, and I would submit they didn't even need to delay because this isn't a situation in which the information comes so close to the actual default hearing that the trustee wasn't aware of it. As I indicated, the audit report was February 24th. The application for the default hearing, which was uncontested, was in early May of 2010, so they had plenty of time to proceed. I would suggest, to your honors, that it didn't even require amending the complaint. Both complaints have as a cause of action a breach of contract. What we're really talking about is different damage numbers, and as I indicated, this can't be the situation where the amount was unknown or came so close in time to the May hearing that the trustee can be forgiven, essentially, for not making that additional damage. I was going to ask you, in comparison of the complaint filed in the first place of $133,829 and the second complaint filed for the $197,226, the allegations involved in the two complaints seem to me to be the same. They are exactly the same, and that's why... No fraud even alleged. And that's why it's always seemed to me a little bit strange that, at least initially, it seems like in the briefing that the trustee has, in some measure, abandoned the claim, the claim being that the causes of action or the claims were different. I think Mr. Sampson was trying to make that point during his argument that there is a distinction between failure to file reports and timely remit, the amounts that those reports are otherwise due at the time, versus falsification or misrepresentation of the actual amount by not properly accounting for the time of the workers and remitting more money. And I agree that's the argument, but I think it's disposed of by CAR, which involved virtually the same issue, which is the relitigation in the initial action proceeding on unpaid contributions in the subsequent action or actions proceeding on delinquent payments. And the court in CAR said it's the same cause of action. So I hear my colleague making that argument. I think it's unavailing under an application of CAR. And as a result of that, it appears to me that the trustee hasn't demonstrated either as a matter of law or as a matter of fact that the lower court erred here. I would field any questions that Your Honors might have. Do we have anything more? I think not. Thank you very much, sir. Thank you very much. The case just argued is submitted.
judges: Tashima, Tallman, Smith